**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| **J&J SPORTS PRODUCTIONS, INC.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civ. Act. No. 14-40133-TSH |
| | ) | |
| | ) | |
| **EDWARD P. MARTIN a/k/a "EDWARD T. MARTIN,")** | | |
| **FRANK T. MARTIN, and** | ) | |
| **MARTIN ENTERPRISES LLC,** | ) | |
| **d/b/a "Marty's Pub,"** | ) | |
| **Defendants.** | ) | |
| | ) | |

**DECISION ON MOTION FOR DEFAULT JUDGMENT**
**September 25, 2015**

**HILLMAN, D.J.,**

**Background**

J&J Sports Productions, Inc. ("J&J Sports") has filed suit against Defendants Edward P.

Martin a/k/a Edward T. Martin ("Edward Martin"), Frank T. Martin and Martin Enterprises LLC

("Martin Enterprises") d/b/a/ Marty's Pub ("Defendants")[1] alleging that on September 17, 2011,

their commercial establishment, Marty's Pub, unlawfully intercepted, received, published,

divulged, displayed and/or exhibited *Star Power: Floyd Mayweather, Jr. v. Victor Ortiz*

*Championship Fight Program* ("Program")[2]. J&J Sports alleges claims against Defendants for

violation of the Communications Act of 1934, 47 U.S.C. § 605 ("§ 605")*, et seq.* (Count I), The

---

[1] On December 15. 2014, J&J Sports voluntarily dismissed this action against Frank P. Martin, and
therefore, "Defendants" shall hereafter refer to Edward Martin and Martin Enterprises.

[2] In addition to the *Mayweather/Ortiz* fight, the Program included various under-card bouts and fight
commentary.

Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. §553, *et seq.*

("§553") (Count II)*,* the Massachusetts Consumer Protection Act, Mass.Gen.L. ch. 93A, §§2,11

("Chapter 93A") (Count IV), and a state common law claim for conversion (Count III). J&J

Sports seeks statutory damages, actual damages and costs (including attorneys' fees).

Additionally, J&J Sports alleges that Defendants acted willfully or knowingly and therefore, it is

entitled to multiple damages.

Defendants were served on December 5, 2014 and were required to answer by December

26, 2014.[3] To date, Defendants have not filed an Answer or otherwise appeared in the case. On

January 14, 2015, the Clerk of the Court entered Default against Defendant (Docket No. 15) and

the Court entered its Standing Order on motions for default judgment (Docket No. 16). The

Standing Order provides that Plaintiff shall file a Motion for Entry of Default Judgment pursuant

to Fed. R. Civ. P. 55(b) within 30 days. On February 12, 2015, J&J Sports filed its Motion for

Default Judgment (Docket No. 17). For the reasons set forth below, the motion to enter default

judgment is granted and J&J Sports shall recover $8,327.84 in damages, costs and fees.

<u>Discussion</u>

*Facts*

J&J Sports was granted the exclusive nationwide commercial distribution (close-circuit)

rights to the Program. J&J Sports entered into sublicensing agreements with various commercial

entities in Massachusetts and elsewhere by which it granted these entities the right to publicly

exhibit the Program within their respective commercial establishments. Defendants'

---

[3]A Worcester County Deputy Sherriff served copy of the Summons and Complaint on Edward Martin in hand at 225 Canterbury Street, Worcester, MA. A Worcester County Deputy Sherriff served copy of the Summons and Complaint on Edward Martin, as agent at the time of service for Martin Enterprises, in hand at 225 Canterbury Street, Worcester, MA. Therefore, from the four corners of the Docket, service appears to have been proper. *See* Fed.R.Civ.P. 4 (e)(1); Mass.R.Civ.P. 4(d)(1).

establishment, Marty's Bar, never lawfully licensed the Program from J&J Sports and unlawfully

intercepted and exhibited the Program on September 17, 2011. The Program was broadcast on

four flat screen 42" televisions hanging on the left wall adjacent to the bar area. An investigator

for J&J Sports observed 28-31 persons in the bar at the time of the intercepted broadcast; at the

time he was at the bar, all of the televisions were showing the 1st fight of the night. Some of the

customers were discussing the upcoming main fight between Mayweather and Ortiz. The

maximum occupancy for the establishment is unknown. Based on the 28-31 persons in

attendance, the sublicense fee would have been $2,200. *See Pl's Aff. In Supp. of Pl's Mot. For

Def. J.* (Docket No. 18); *Aff. Of Jody A. Whitney* (Docket No. 19)("*Whitney Affidavit*").[4]

### *Entry of Default Judgment*

The Court has reviewed Plaintiff's Complaint, which requests money damages and costs

(including attorneys' fees). The Defendants, as a defaulting party, are "taken to have conceded

the truth of the factual allegations in the complaint as establishing the grounds for liability as to

which damages will be calculated." *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999).

The Court has also reviewed Plaintiff's motion for entry of default judgment and supporting

memorandum, as well as the accompanying affidavits. The Court is satisfied that the allegations

are sufficient to support the entry of default judgment and more particularly, that Defendants are

not infants, incompetent, or in military service of the United States, and that they caused J&J

Sports' damages and owes any costs incurred. A hearing has not been held on J&J Sports'

motion for default judgment. The primary issue before the Court is how damages should be

assessed against the defaulting Defendants. The Court must determine Defendants' liability for

---

[4] I will note that the case caption for the *Whitney Affidavit* refers to "Edward P. Martin, et al. dba *Asadero Restaurant*." The Court assumes that this is an inadvertent reference as the substantive body of the affidavit refers throughout to Marty's Pub with no mention of the *Asadero* Restaurant.

each claim and must then assess damages by considering the type and amount of damages to be

awarded, including whether enhanced damages, attorneys' fees and costs are appropriate.

*Plaintiff's Claims For Statutory Damages Under 4 U.S.C. §§533 and 605*

Plaintiff asserts a claim under the Communications Act of 1934, 47 U.S.C. § 605 *et. seq.*

and The Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. §553,

*et seq.* Sections 605 and 553 are similar, however, §605 provides for mandatory recovery of

costs and attorneys' fees while under §553, recovery of such damages is discretionary. J&J

Sports acknowledges that First Circuit's ruling in *Charter Commc'ns Entm't I v. Burdulis*, 460

F.3d 168, 172-78 (1ˢᵗ Cir. 2006) suggests that §605 does not encompass Defendant's alleged

wrongful conduct, *i.e.*, interception of the transmission of the Program, because the conduct does

not amount to unauthorized receipt of radio communications. J&J Sports argues, however, that

the conduct in this case is more analogous to the conduct in *PPV Connection, Inv. v. Rodriguez*,

607 F.Supp.2d 301 (D.Puerto Rico 2009), in which the district court in Puerto Rico found that a

licensed distributor of pay-per-view programming (such as Plaintiff) that sends its programs to

commercial buyers via cable wire or direct satellite can seek relief under §605, because such

programming can be transmitted over satellite or radio.

Circuit Courts are split as to the applicability of §605 and §553 to allegations involving

the theft of cable services.[5] Section 553 provides, in relevant part, that "no person shall intercept

or receive or assist in intercepting or receiving any communications services offered over a cable

system, unless specifically authorized to do so by a cable operator… " 47 U.S.C. §553(a)(1).

Section 605, on the other hand, provides that "[n]o person receiving … any interstate or foreign

---

[5] At the same time, it is clear that a plaintiff cannot recover under both statutes for a single violation. *See J&J Sports Productions, Inc. v. Mendoza-Govan,* 2011 WL 1544886, at 7 (N.D.Cal. Apr. 25, 2011); *Joe Hand Promotions, Inc. v. Willis*, No. 5:08CV276, 2009 WL 369511 (N.D. Oh. Feb. 11, 2009).

communications by wire or radio shall divulge or publish the existence, contents, substance purport, effect, or meaning thereof… ." 47 U.S. C. §605(a). Some courts have interpreted Section 553 as applying where a commercial establishment intercepts a cable signal and § 605 as applying where a commercial establishment intercepts a satellite broadcast. *See J&J Sports Productions, Inc. v. Mosley*, No. C-10-5126 CW (EMC), 2011 WL 2066713 (N.D. Cal. Apr. 31, 2011) and cases cited therein; *see also J&J Sports Productions, Inc. v. Chacko*, Civ.Act. No. 1:13-CV-1977-CC, 2013 WL 6190603 (N.D. GA. Nov. 25 (2013) (noting that Third and Seventh Circuits have taken position that §553 convers interception of cable programming transmitted over cable network and §605 covers cable transmissions as they travel through the air, *i.e.*, satellite transmissions). Other courts have interpreted the act of intercepting cable and/or satellite signals as violating both §533 and § 605. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2$^d$ Cir. 1996); *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F.Supp.2d 659 (E.D.Va. 2013). The prevailing view in this District, based on the First Circuit's decision in *Burdulis*, is that §553 applies to theft of cable services while § 605 applies to theft of satellite services. This is the view which I find persuasive.

J&J Sports has alleged a violation of both §553 and 605. While it is clear that Defendants' establishment necessarily intercepted either a cable or satellite broadcast, it is impossible to determine from the affidavits submitted in support of its motion for default judgment whether Defendants' establishment utilized a satellite dish or cable box. Cable boxes are smaller and more easily concealed. Moreover, no satellite dish can be seen in the included picture of the establishment, nor does the private investigator mention seeing a satellite dish. Therefore, on this record, the Court will assume that Defendants violated §553 by intercepting a cable program over a cable network.

*Assessment of Damages Under §553*

Section 553 provides for assessment of damages as follows:

> [d]amages awarded by any court under this section shall be computed in
> accordance with either of the following clauses: (i) the party aggrieved may
> recover the actual damages suffered by him as a result of the violation and any
> profits of the violator that are attributable to the violation which are not taken into
> account in computing actual damages ...; or (ii) the party aggrieved may recover
> an award of statutory damages for all violations involved in the action, in a sum of
> not less than $250 or more than $10,000 as the court considers just.

47 U.S.C. § 553(3)(A). Additionally, where the violations were "committed willfully and for

purposes of commercial advantage or private financial gain, the court in its discretion may

increase the award of damages, whether actual or statutory under subparagraph (A), by an

amount of not more than $50,000." *Id.*, § 553(c)(3)(B).

Based on the record before me, I find that Defendants are liable for a single violation of

§553. That is, the facts are sufficient to establish that they or their agents intercepted and

displayed a transmission of the Program at their commercial establishment, Marty's Bar, when

they were not entitled to do so in violation of 47 U.S.C. §553. The maximum statutory damages

which J&J Sports would be entitled to recover is $10,000. In this case, there were anywhere from

28-31 individuals in the establishment while the Program was being broadcast, the Program was

displayed on four television screens and there is no evidence that Defendants charged a cover

fee. At the same time, patrons were discussing the fight and therefore, it is reasonably likely that

at least some of them came to the establishment to view the fight.  Under these circumstances, I

am awarding J&J Sports its actual damages, that is, the $2,200 to which it would have been

entitled had Defendants paid it the appropriate sublicensing fee.

J&J Sports also seeks enhanced damages on the grounds that Defendants' violation was

willful and for the purpose of commercial advantage or private financial gain. Based on the

record before me, I find that J&J Sports has established that Defendants' interception of the cable

signal was necessarily intentional and that it was done for purpose of commercial advantage or

private gain, that is, it was done to induce patrons into the establishment in order to sell food

and/or beverages. Therefore, I am awarding J&J Sports an additional $4,400 in enhanced

damages.

*Attorneys' Fees; Costs of Suit*

Pursuant to Section 553(c)(2)(C), the Court has discretion to "direct the recovery of full

costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." J&J

Sports has established that it has incurred $1,000 in attorneys' fees. Based on the affidavit of J&J

Sports' counsel, Patricia Szumowski, I find the hours expended (four) to be reasonable for this

matter and the rate charged ($250 per hour) to be comparable to that charged by attorneys with

like experience in this geographic area.  Attorney Szumowki anticipated an additional three

hours of time, including appearing at a hearing on the motion for default judgment.  Since no

hearing was held, I will award Attorney Szumowski one addition hour of time ($250). Therefore,

J&J Sports is awarded attorneys' fees in the amount of $1,250.00. In addition, costs are awarded

against Defendants in the amount of the $477.84 expended by J&J Sports for filing and service

costs. *See Affidavit of Patricia A. Szumowski* (Docket No. 20).

*Plaintiff's Chapter 93A Claim*

I agree with those courts in this District that have found that for purposes of Chapter 93A,

it is an unfair business practice for a commercial establishment to intercept a cable signal and

exhibit a sports program. *See Joe Hand Promotions, Inc. v. Patton*, Civ.Act. No. 10-40242-FDS,

2011 WL 6002475 (D.Mass. Nov. 29, 2011) and case cited therein. However, an award of

enhanced damages and attorneys' fees under Chapter 93A would be duplicative. *Id.*

*Plaintiff's Conversion Claim*

J&J Sports has also asserted a state law claim for conversion. Some courts have held that a state law conversion claim is barred on preemption grounds under the Federal Communications Act and/or the Copyright Act. *See Id.* It is not necessary for me to determine what the First Circuit would hold on this issue, because the damages awarded to J&J Sports under Section 553 are sufficient to compensate it for its loss and therefore, as with the Chapter 93A claim, any award of damages for conversion would be duplicative.

## Conclusion

The Motion For Default Judgment (Docket No. 17) is ***granted***. The Clerk shall enter the Default Judgment in favor of J&J Sports Productions, Inc. as follows:

1. Compensatory damages in the amount of $2,200,

2. Damages for a willful violation in the amount of $4,400,

3. Attorneys' fees in the amount of $1,250, and

4. Costs in the amount of $477.84.

The clerk is directed to enter judgment for J&J Sports Productions, Inc. in the total amount of $8,327.84, with prejudgment interest as provided by law on the damages awards.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**